J-S68002-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PATRICK J. DOHENY, JR. | : | |
| | : | |
| Appellant | : | No. 846 WDA 2017 |

Appeal from the PCRA Order June 5, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001734-2012

BEFORE:   SHOGAN, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.:                          FILED DECEMBER 27, 2018

Appellant, Patrick J. Doheny, Jr., appeals from the June 5, 2017 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.[1]

The relevant facts of this case were set forth by a prior panel of this Court in disposing of Appellant's direct appeal:

The trial court summarized the testimony introduced at trial as follows:

_____

[1] On September 11, 2018, Appellant filed an application to strike the Commonwealth's brief.  Appellant claimed the Commonwealth's brief was improperly served five days after it was filed with this Court, and therefore, it created an abbreviated time within which Appellant could file a reply brief. Application to Strike, 9/11/18, at ¶14.  Appellant requested that this Court strike the Commonwealth's brief, or in the alternative, allow additional time for Appellant to file a reply brief.  Id. at ¶¶15-16.  Thereafter, Appellant filed a reply brief on September 21, 2018.  After review, we deem Appellant's reply brief timely filed, and we therefore, DENY Appellant's application as moot.

_____

*   Former Justice specially assigned to the Superior Court.

The evidence adduced at trial demonstrated that Lorenz Neureuter was operating his motorcycle on Baum Boulevard in the Bloomfield section of the City of Pittsburgh on October 5, 2011 during the evening hours. He was travelling approximately 30 miles per hour in an area that had a speed limit of 35 miles per hour. As he was heading west in the curb lane on Baum Boulevard, a car in the oncoming lane operated by Appellant began swerving out of control across the double yellow line in the center of the road. Appellant's vehicle crossed into the left lane and then the curb lane of oncoming traffic and collided with Mr. Neureuter's motorcycle. Mr. Neureuter was thrown from the motorcycle. He was wearing a helmet, boots and a jacket. He was not able to get up from the street and he could not move his left arm and left leg. His motorcycle caught fire. The front fork and wheel of the motorcycle became separated from the motorcycle. Soon, help arrived and he was taken to UPMC Presbyterian Hospital. He sustained a compound fracture of the left tibia, a shattered, broken left elbow, a dislocated leg, a fractured hip and various other injuries. He remained at UPMC Presbyterian hospital for a week. He spent an additional three weeks in a nursing home. As of the time of trial, Mr. Neureuter had residual effects of his injuries. He has permanent limited range of motion in his left elbow, he has a loss of feeling in two fingers and he walks with a limp. He is no longer able to run. Mr. Neureuter did not consume any alcohol, drugs or prescribed medication prior to the incident.

Officer William Kunz of the City of Pittsburgh Bureau of Police testified that he responded to the scene. Officer Kunz has made between 200 and 250 arrests for [driving under the influence ("DUI")]. Upon arriving at the scene, he identified Appellant as the driver of the car involved in the accident. He approached Appellant, who appeared confused and disoriented. His eyes were glassy, bloodshot and unfocused. He noted an odor of alcohol emanating from Appellant. Appellant advised Officer Kunz that he was driving eastbound on Baum Boulevard and he attempted to pass a vehicle in front of him by entering

the left passing lane. He related to Officer Kunz that as he began to pass the vehicle, he felt an impact. He wasn't sure he hit something or if something hit him. Officer Kunz looked into Appellant's car, which was parked down the street, and he observed a cardboard container for a six-pack of beer and there were three loose bottles of beer in the vehicle which were cold. Due to the fact that an accident reconstruction team was called to the scene and Officer Kunz believed somebody else would be administering them, field sobriety tests were not immediately requested. Accident reconstruction indicated that the collision occurred in the west bound curb lane of Baum Boulevard and that Appellant's car had been sliding sideways across Baum Boulevard prior to the accident. This conclusion was consistent with Mr. Neureuter's testimony.

City of Pittsburgh Police Officer Glen Aldridge responded to the scene. Officer Aldridge testified that he had made approximately 200 prior DUI arrests. Officer Aldridge was qualified as an expert in accident reconstruction and an expert in alcohol recognition. In addition to investigating the actual accident to perform a reconstruction of the accident, Officer Aldridge encountered Appellant. Appellant's eyes were glassy and glazed and he had alcohol on his breath. He observed Appellant's gait as he walked and it appeared wobbly. Based on his observations of Appellant, he believed Appellant was under the influence of alcohol and that he was not able to safely operate a motor vehicle due to the effects of the alcohol. During the course of his interaction with Appellant, Appellant indicated to Officer Aldridge that … Appellant didn't know what happened to cause the accident.

City of Pittsburgh Police Officer Kevin Walters testified as an expert in accident reconstruction and in alcohol recognition. He has made numerous DUI arrests and has observed over 100 people to determine whether they are under the influence of alcohol. He responded to the accident scene and did encounter Appellant. He

observed Appellant's bloodshot and glassy eyes. Appellant appeared to be slow in answering questions posed to him by Officer Walters. Appellant swayed as he stood. Officer Walters believed that Appellant was under the influence of alcohol and was not able to safely operate a motor vehicle.

Appellant's blood alcohol reading was .139% whole blood ethanol, at 1:10 a.m., roughly over an hour after the accident.

Appellant presented the testimony of an expert in accident reconstruction. The expert testified that there could have been other causes of the accident unrelated to Appellant's alcohol consumption, namely an underinflated tire. He could not, however, offer any opinion as to whether alcohol played any role in the accident in this case.

Additionally, Appellant presented the testimony of his mother. She testified that she received a phone call from Appellant at approximately midnight on October 6, 2011 indicating that he had been in an accident. His mother and father appeared at the accident scene at approximately 12:15 a.m. She testified that Appellant was excited, not slurring his words, and that she did not smell an odor of alcohol on him and that he did not exhibit any signs of intoxication.

Commonwealth v. Doheny, 121 A.3d 1125, 28 WDA 2014 (Pa. Super. filed April 9, 2015) (unpublished memorandum at *2-4) (quoting Trial Court Opinion, 7/18/14, at 1-4)).

Appellant was charged with one count of aggravated assault by vehicle while driving under the influence of alcohol ("DUI"), DUI resulting in bodily injury, DUI – high rate of alcohol, DUI - general impairment, reckless driving,

and, driving on right side of roadway.[2]  On January 18, 2013, following a bench trial, the trial court acquitted Appellant of reckless driving, and it found Appellant guilty on all other counts.  On the convictions for aggravated assault by vehicle while DUI and DUI - general impairment, the trial court sentenced Appellant to concurrent sentences resulting in an aggregate term of four years of probation, which included eighteen months of county intermediate punishment, restitution, fines, and community service.  Order of Sentence, 6/24/13.  The trial court imposed no further penalty on the driving on right side of roadway count, and it concluded that the remaining convictions merged for sentencing purposes.  Id.

Appellant filed a timely appeal, and on April 9, 2015, this Court affirmed Appellant's judgment of sentence.  Doheny, 28 WDA 2014 (unpublished memorandum).  On February 8, 2016, our Supreme Court denied Appellant's petition for allowance of appeal.  Commonwealth v. Doheny, 131 A.3d 490 (Pa. 2016).

On February 8, 2017, Appellant filed the PCRA petition underlying the instant appeal.  The PCRA court held a hearing, and it denied Appellant's petition on June 5, 2017.  Appellant filed his notice of appeal to this Court on June 9, 2017.  Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.

_____

[2] 75 Pa.C.S. §§ 3735.1(a), 3804(b), 3802(b), § 3802(a)(1), 3736(a), and 3301(a), respectively.

On appeal, Appellant raises the following issues for our consideration:

1. Does the Superior Court retain jurisdiction to award [Appellant] PCRA relief on the basis that the PCRA hearing afforded to [Appellant] on June 5, 2017 failed to comport with fundamental fairness, a determination that is inextricably intertwined with the merits of [Appellant's] appeal?

2. Is [Appellant] entitled to a new trial or judgment of acquittal on the basis that the Commonwealth manufactured the causation element of [Appellant's aggravated assault while] - DUI conviction by withholding Brady[3] material (i.e., the finding that [Appellant] was not impaired by alcohol at the accident scene) then substituting the withheld Brady material with criminally false testimony concerning [Appellant's] alleged impairment at the accident scene?

3. Did the judge presiding over the PCRA hearing commit multiple violations of the Code of Judicial Conduct that so corrupted the integrity of the PCRA hearing as to violate the "fundamental fairness" requirements of due process?

Appellant's Brief at 5.

Our standard of review for an order denying PCRA relief is limited to determining whether the record supports the PCRA court's determination and whether that decision is free of legal error. Commonwealth v. Allen, 48 A.3d 1283, 1285 (Pa. Super. 2012) (citation omitted). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. Id.

---

[3] Brady v. Maryland, 373 U.S. 83 (1963) (holding that the prosecution's suppression of evidence favorable to a criminal defendant violates due process where the evidence is material to guilt or punishment).

Before we may address the merits of this appeal, we must first determine if Appellant is eligible for relief under the PCRA. It is well settled that in order to be eligible for PCRA relief, a petitioner must be currently serving a sentence of imprisonment, probation, or parole at the time relief is granted. Commonwealth v. Plunkett, 151 A.3d 1108, 1109 (Pa. Super. 2016) (citing 42 Pa.C.S. § 9543(a)(1)(i)). In the case at bar, Appellant and the Commonwealth concur that Appellant is no longer serving a sentence, and the parties agree that Appellant completed his sentence on June 24, 2017. Commonwealth's Brief at 20; Appellant's Brief at 36. Thus, we conclude that Appellant is not eligible for relief under the PCRA.

Appellant argues that there is a due process exception to his pursuit of PCRA relief notwithstanding the expiration of his sentence. Appellant avers that Commonwealth v. Turner, 80 A.3d 754 (Pa. 2013), provides "a possible exception" to the aforementioned eligibility requirements of 42 Pa.C.S. § 9543(a)(1)(i). Appellant's Brief at 37. Appellant claims that Turner announced a "fundamental fairness" requirement of due process. Appellant's Brief at 37 (citing Turner, 80 A.3d at 768). After review, we conclude that Appellant's reliance on Turner is misplaced.

Although the Turner Court discussed due process and fundamental fairness as it related to a petitioner's rights when his or her sentence expires prior to resolution of PCRA claims, the holding in Turner does not advance Appellant's argument. Indeed, the Turner Court explained that the petitioner

therein had no due process right to be heard outside of the eligibility limits imposed by Section 9543(a)(1)(i) of the PCRA. Turner, 80 A.3d at 758. The Court concluded that due process rights were not violated as the petitioner had the opportunity to bring her claims on direct appeal or within the time frame permitted by the PCRA.

Moreover, in Plunkett, a case analyzing Turner, our Court explained: "[B]ecause the petitioner's liberty interest was no longer affected after his or her sentence was completed, there was no due process violation in denying relief when the PCRA petition had been filed in a timely manner, but the sentence expired prior to any adjudication." Plunkett, 151 A.3d at 1110 (citing Turner, 80 A.3d at 761-762). "Accordingly, the denial of relief to a petitioner who was no longer serving a sentence, even when the PCRA process had begun in a timely manner, was not constitutionally infirm." Plunkett, 151 A.3d at 1111.

In his reply brief, Appellant persists and argues that Plunkett supports his claim. Appellant's Reply Brief at 16. Appellant posits that he is presenting "an issue of first impression concerning what, if any, minimum level of 'fundamental fairness' must be afforded to a PCRA petitioner during the post-conviction proceedings themselves." Id. at 17. Appellant then proceeds to raise allegations of prosecutorial misconduct and judicial misconduct that he claims merit relief. Appellant cites to language from Turner, which stated: "[A]lthough states have no constitutional obligation to provide a means for

collaterally attacking convictions, if they do, then such procedures must comport with the fundamental fairness mandated by the Due Process Clause." Turner, 80 A.3d at 764; Appellant's Reply Brief at 17. Appellant focuses on the "if they do" language from Turner and argues that because the PCRA does provide a mechanism for collaterally attacking a conviction, these measures "cannot be a mere sham." Appellant's Reply Brief at 17.

After review, we conclude that Appellant is entitled to no relief. Nothing in the record supports a conclusion that Appellant's PCRA proceedings were a sham. Appellant filed a direct appeal, petitioned for allowance of appeal in our Supreme Court, and filed a timely PCRA petition. Although the PCRA petition was timely, the PCRA court denied relief on June 5, 2017, which was only nineteen days prior to the expiration of Appellant's sentence. Thus, similar to Turner, Plunkett, and myriad other cases, Appellant's sentence expired making him ineligible for PCRA relief. We discern no due process violation, as Appellant had no due process right to be heard outside of the limits set forth in Section 9543(a)(1)(i) of the PCRA. Turner, 80 A.3d at 758. Accordingly, because we conclude that Appellant is not eligible for relief under the PCRA, we affirm the order denying PCRA relief.[4]

_____

[4] We are cognizant of the fact that Appellant was still serving his sentence when the PCRA court denied his petition on other grounds. However, it is well settled that "we may affirm a PCRA court's decision on any grounds if the record supports it." Commonwealth v. Benner, 147 A.3d 915, 919 (Pa. Super. 2016) (quotation omitted).

Order affirmed.  Application to Strike DENIED as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/27/2018